Next case is the same appellant, B.E. Technology v. Microsoft and Google, 2015-18-28, and we're up to one of three rejections, probably a different prior art, and that might be Gouyeau. So, Mr. Angel, proceed, and of course, you don't need to repeat what's been said with respect to the patent, but proceed. Good morning, Your Honors. May it please the Court. I'd like to focus my comments this morning, my first set of comments, on the finding by the Board that Gouyeau discloses demographically targeted advertising, and our contention that there's not substantial evidence to support that finding. Claim 11 of the 314 patent describes a method of providing demographically targeted advertising to a computer user. Claim 11 also requires that the demographic information acquired by the method include information specifically provided by the user in response to a request for said demographic information. The 314 patent does not expressly describe, define demographic information, although it does define other terms. The Board construed demographic information as collected characteristic information about a user. And you agreed with that construction? We are not disputing that construction, that's right, Your Honor. But we do dispute that there's substantial evidence supporting the finding that Gouyeau discloses demographic information. So it's undisputed that the term demographic information or any of its variants does not appear in the Gouyeau reference at all. Microsoft argued in its petition that the questionnaire of Gouyeau discloses the collection of demographic information. The Board found that demographic information is disclosed both in the questionnaire and in the collection of certain computer user information that's later transferred to the Gouyeau system. So the Gouyeau system includes a database that includes a set of subscriber data and subscriber statistics. The subscriber data includes identification information about the user that would include a password and perhaps other identifying information. What about the fact that it says that in addition to that there's a personal profile that is used to target specific advertisements and distinguishes that? It says that's something that's distinguished from the identification information. Yes, Judge Stoll, that's right. There's also a personal profile and it's with the questionnaire that the personal profile is built. And that's the information that is used for the targeted advertising? Yes, along with supplementation of that personal profile based on the computer user information that's collected as part of the subscriber statistics. What do you think that is if it's not demographic information? Well, it could be anything. So it would depend on what the... It's not identification information, right? It could be. It could be identification information. What about the fact that the reference describes those two as being separate things and uses different words to describe them? So it says that there's some identification information that's stored as part of the identification information in the subscriber data, but that doesn't necessarily exclude other information that might be collected through the questionnaire that could also be identifying of the user. So it does seem that there's specific identification information that's collected and stored as part of that identification information. But since we don't know what's in the questions, it's possible that maybe there's a question in there that does some identification. What about the fact that the background section of your own patent says that demographic information is used for targeted advertising? Isn't that an admission? And that it's often collected using questionnaires? No, I wouldn't call that an admission. It's a statement of reality that is... A statement of what is in the background of the invention? Yes, in the background of the 314 patent. It's undisputed that one way to collect demographic information is through the use of a questionnaire. But there's perhaps other ways to collect demographic information, and just because it can be collected with a questionnaire doesn't mean that it is. And anticipation requires that there be a disclosure in as much detail as is in the claim, and that's what's missing from GAIO. So you ask what questions could be asked that's not demographic information through the questionnaire. So an advertiser might want to know, when was the last time you saw a movie? What was the movie? When is the next time you're going on vacation? How long are you going on vacation? Why isn't that demographic information? Well, it's not demographic information because it's not durable in any way. It doesn't serve to define a user in any particular way. That shows that I like to take a lot of vacations. Well, in the aggregate, with other information, perhaps there's a way that eventually it could be, but I would say that if the definition of demographic information is taken to that sort of extreme, then anything is demographic information, and that can't be the case. There must be some information that's not, and questions can be asked through the questionnaire that do not seek demographic information. What about the Internet usage history? Why isn't Internet usage history, as disclosed in GAIO, satisfying this demographic information limitation? So there's two reasons for that. The first is that where a user goes on the Internet is simply that. It's where the user goes on the Internet. It has nothing to do with demographics. But under the 314 pattern, computer usage information… Well, I guess as defined or construed by the board, we're talking about collected characteristic information about the user, right? So if, I don't know, if I go on the Internet and there's a clear pattern and I can't help myself, I keep going to ESPN.com over and over and over again. And now these magic machines around the network see that, and now they decide they're going to start feeding me banner ads that are related to sports somehow. Maybe I'm always looking at football, so then they start sending me things about football. You know, I have a clearly defined trait there, and why isn't that collected characteristic information about me and what I browse? Judge Chan, the answer to that is that Claim 11 distinguishes between demographic information and computer usage information repeatedly throughout the claim. There's demographic information that's acquired about the user, but then the computer usage information is separate. So in the third element of Claim 11, it describes acquiring demographic information about the user, said demographic information including information specifically provided by the user in response to a request for the demographic information. And then the software that's provided to the user in the next element… and then talks about demographic information. But I didn't quite see anything in the claim that necessarily cleaves the two apart and why one can't be perhaps a subcategory of the other. So the last element of Claim 11 associates the computer usage information with the demographic information, and it wouldn't be possible for those two sets of information to be overlapping if they're going to be associated with one another. I mean, they must be separate in order for them to later be associated. So that's one of the reasons that they must be separate. But there is a definition for computer usage information, and it's separate from the… it does not describe demographic information in the specification. I guess what I'm trying to figure out is if we were to conclude that there's substantial evidence that internet usage information meets the claim construction, collected characteristic information of the user, then I think that's the end of the game. It would depend, Your Honor, because first of all, our view is that the questionnaire does not call for the collection of demographic information. If the court agrees with that, then the presence of then the status of computer usage information as demographic information does not establish that all of the elements of the claim are met. So let me try to say that a little more clearly. What I mean by that is in the third element of Claim 11, the element requires the acquisition of demographic information about the user, and that must include information specifically provided by the user in response to a request. So simple computer usage information is not provided by the user in response to a request, so if that's the only source of demographic information, then there's not a sufficient disclosure in the GAIO reference to invalidate. Okay. I'll just repeat what I was thinking again. If, I mean, what is demographic information? We could have a debate about it, but we have a claim construction that has not been objected to, so now we have to filter our analysis through that claim construction. So it's almost like what does demographic information mean? Who knows, but let's set that to the side, because now we're dealing with a claim construction. Collected characteristic information of the user. Is the browsing history of the user collected characteristic information of the user? I think that's what this case boils down to, at least with regard to this limitation. Would you agree with that? Not exactly, Your Honor. So I think that the individual websites that a user visits are not characteristic information about a user, and this is something that Mr. Goldstein discussed in his deposition when he was asked about whether or not computer usage information could be demographic, and he repeatedly said that no, it cannot. The definition that the Board ascribed to demographic information that is characteristic of a user, it must mean something. Some definitions of characteristics from the Merriam-Webster Dictionary is a distinguishing trait, quality, or property. What about in your blue brief you talk about, for an example, that questionnaire could ask, what is somebody's favorite sports team? So you find out my favorite sports team is the Michigan State Spartans, and then you might say, well, is that collected characteristic information about me? I think it's an answer to a question. I wouldn't say it's a characteristic. It's not something that's enduring. So something that simply is, what did you eat for breakfast? Where did you go yesterday? These are not characteristics of people. They're simply data points. That's not characteristic information to provide targeting advertising? Well, there's two different questions there. So would it be useful to target advertising? I would say yes. Is it characteristic information? Is it demographic information? I would say no. So something can be useful to an advertiser like, where did you go yesterday? What was the last movie that you saw? What was the last book that you read? That might be useful from an advertising perspective, but I would not say that that's characteristic of a user or that it's demographic information in the ordinary sense. Mr. Rangel, you wanted to save rebuttal time? You were into it? I would. We will save it for you. Thank you. Mr. Kushner. May it please the Court. You've presaged a number of the issues I wanted to address in our response. The first one was the observation that you made that the Board's definition or construction of demographic information is very expansive, and that definition encompasses evidence which was demonstrated before the Board that there is information in DO which satisfies that definition. The subscriber statistic updating process that was referenced was the subject of questions to their expert, Mr. Goldstein, who admitted this pattern of visiting a website would cleanly satisfy the meaning of the demographic information. And the thing to take away from that is there is a pattern of visiting which reveals a characteristic of the user which is not identifying the user. When we asked Mr. Goldstein that at his deposition, he freely admitted that was an example of demographic information, and that can be found at A1918 lines 5 through 23. Now, the other issue that was raised was whether the process that's being described in DO of using a questionnaire to collect information satisfies the demographic information requirement. And here there's substantial evidence that was before the Board that demonstrated that's what is taught by DO. The correct legal question when you're looking at anticipation is what does the reference teach the person of skill in the art? And here what the evidence demonstrated, supported by substantial evidence, was that that technique that was described in DO of using a questionnaire to collect information and then to create a personal profile using that information was in fact collecting demographic information. Are we talking about the subscriber data? There's two features of DO which were addressed. Subscriber statistics, subscriber data? Correct. So there's two features. One was the questionnaire process, which is used initially to create the personal profile, and the second process was the updating of that personal profile with things like the web browsing history. And what that evidence demonstrated was that the personal profile is initially created and contains demographic information, and then additional demographic information is included into it. But doesn't the construction also require that the information not identify the user? Yes, and that was demonstrated to be the both features of that process were demonstrated by the evidence before the board. One thing that we'd like to flag is that the board had substantial evidence they relied on for both elements. One was in the process that's being depicted in DO, that was recognized by our expert, Dr. Ho, as being a very common technique for collecting demographic information. In that process, and he recognized that as a very common technique, that's also reflected in their own patent, which says that perhaps the most common way of collecting demographic information is using that questionnaire technique. Did the board rely on this questionnaire from GEO to conclude that GEO meets this claim limitation? Yes, we believe the board relied on both the process depicting the use of the questionnaire and the subscriber statistics. Where did it say that? If you look at the board's decision at 814, it recognizes, it states very simply, we agree with the petitioner after reciting the two features that we set out in our briefing. And you see one phase of that discussion focused on the GEO process of using the questionnaire to collect the demographic information. The second aspect was the subscriber information you being used to update the personal profile. And we believe that's demonstrated in the board, recognized the evidence before it satisfied the claim by either and both of those techniques shown in GEO. Mr. Cushon, the motion to amend is also present in this case. We've seen real-time mentioned several times in the specification, so why wasn't the written description requirement met? Well, so there's two issues that we saw with the written description argument they made. The first one is that the claim language was not clear. What is real-time referring to? Is it referring to the actions at the client computer? Is it referring to the actions at the server? Is it referring to some combination of those two? No, it was the paragraph 2 issue. Correct. Indefiniteness. Well, there was an indefiniteness issue, and that's why the board requires the petitioners moving to amend to include a construction so they can avoid some of those problems. But here, when you look at what they argued in their briefs before the court, they point you to the abstract, and they also point you to a passage which is in the original filing. This is at A1625. And what's being referenced in the latter point is the technique of using the real-time computer usage information to display which ad is going to pop up on the user's computer. And that's a very different concept from the idea of using real-time information that might be going back to the server to select different ads. So that, in a nutshell, is the problem, is that there was confusion about what the real-time information is being used to do. And when you look in their pleadings in the motion to... Can you explain that point again? Sure. The confusion you're trying to create? Sure. I think the confusion is... I would submit the confusion is in how they presented their argument in that claim amendment. So in the patent, there are a couple different instances of real-time usage information or use of real-time information. One is the user's actions on the computer are being tracked, and that determines what will pop up on their screen on the client computer as the ad, based on their actions. That's local to the computer. And if you look at A1625, you see these identifiers. This is a quote from the passage they cite. These identifiers permit real-time reactively targeted advertising since the program can respond to user interaction with the computer to determine whether the input relates to a particular category of information, and if so, can select advertising related to that category of information. So you think that's all happening at the local client? Right. And that was the subject of testimony. And that there's some database at the local client? That's correct. Are there ads? There is a set of ads that are resident on the client that are being selected or presented based on the user action. It's also things like whether the user is active and looking at the screen. But that is one instance of the use of real-time, which doesn't align with the claim language they added into their claim, which is speaking of a different concept, maybe focused on the subscriber on the server action of selecting new ads. Again, this goes back to the legitimate exercise of discretion by the board in looking at the amendment that was presented and finding that in the absence of a construction, in the absence of detail that mapped the description to the claim elements being added, and in the question that was raised about what real-time is referring to, that there would be a question about whether that is enjoying written description support. And the board looked at all of that and decided correctly that there wasn't written description support for that claim amendment.  Again, when you're reviewing that action of the board and denying that motion to amend, you have to look at it from the perspective of whether the board exercises discretion correctly. And we believe that is the case here. And they properly denied the amendment. So what would a proper motion to amend look like? Well, I think a proper motion to amend in this instance would, first of all, explain what the meaning of the claim terms are that are being presented. And then there should be an explanation mapping pretty clearly for the board so they can determine whether that claim amendment is enjoying written description support in the specification. That, I think in this instance, would require more than simply listing various citations in the patent specification, especially when it's not clear what the claim elements are that are being added into the claim. Going back to demographic information, your opposing counsel was making the point that computer usage information, as that term is used in the claim, can't possibly be the same thing or interchangeable with demographic information because that's a different claim term used in the claim. And ultimately, in the final limitation, it talks about associating the computer usage information with the demographic information using the unique identifier. That is to say, associating X with Y using Z. So why would X equal Y in a situation like that? Well, the first thing to appreciate is that the two buckets of information that are being referenced, the demographic information and the computer usage information, are very broad categories of information. They cover many, many different kinds of information. There's no definitional language in the patent that says computer usage information cannot also include or qualify as demographic information. There's no definition at all of demographic information in the patent. I'm just asking you to think through with me the final limitation of the claim. Sure. In that final limitation, you can imagine an application of their system using two different kinds of information. One would be an instance of computer usage information, and that would be correlated using the unique identifier to an instance of demographic information. There's no requirement that they be different or identical. You can more reasonably understand that claim term to be imagining that the two different types of information are, in fact, addressing different categories or different types of information. Well, how is GEO performing that final limitation? How is it associating Internet usage history with Internet usage history? So in the GEO system, the subscriber statistics are collected on an ongoing basis and sent to the server. Some of that information is being used, such as the web browsing history, to refine that personal profile. Other information is being stored and used in the process of reactive advertising. In that process, the GEO system is using a unique identifier, which is a collection of information sent from the user's computer to GEO's servers to identify that information that's coming over. When that comes into GEO, GEO uses the composite of these different types of information that have been collected and sent to the server and is associating that information. On the client as well, there's an application of using that information at the client side to associate the information that's coming back from the GEO server to determine which ads are being displayed on the user. And that's plainly using information as connecting the two categories of information. But going back, if I could, to the question. I think you correctly focused on the overlap question. I want to just flag that in the 314 specification, you can find examples of information falling into both categories. And I would direct your attention to A52 at column 3, lines 8 to 11. That gives you a number of examples of demographic information, one of which is time zone. You go down to the definition of computer usage information. That's just down on A52 at lines 37 to 41. And you see a reference to computer usage information as being or including the time of the day or days of the week they use the computer. So you can see the information that is being used in GEO of this time zone information is landing in both categories as it's been defined in the patent and is construed in the board's construction. And that's an illustration of the breadth of both those categories. You can find examples of information which is going to qualify under either. If you don't have any further questions, I'm happy to rest. Thank you, Mr. Cushan. Mr. Angel has a little rebuttal time. Thank you, Your Honors. I'd like to go back to a question that Judge Chen asked early on in Mr. Cushan's presentation. Judge Chen asked whether the board relied on the questionnaire in its finding that there was a disclosure of demographic information. Mr. Cushan said yes, but I'd suggest that the board did not rely on that. And this can be seen at page 814 of the appendix. The first full paragraph, the board says only that the personal profile was obtained by having the subscriber provide answers to the questionnaire. There's nothing there that says that the questionnaire describes demographic information or discloses demographic information. This is important because the questionnaire was the only thing presented in the petition as a disclosure of demographic information. The computer usage information did not show up in the petition as a disclosure of demographic information. That showed up only in the reply, and we point this out in our briefs. What about the section that he cited before that on page 813 where he says the petitioner responds and says, you know, that the profile questionnaire updates the user's personal profile as demographic information, and then they say we agree. Why isn't that enough to show that the board had that view? I don't think that you can conclusively draw that determination. The paragraph that Your Honor is citing on page 813 is a recitation of the petitioner's position, and then the paragraph that follows it on page 814, they do say we agree with the petitioner. It's not necessarily referring to anything specific. There's the one-liner about the questionnaire, and then there's a detailed discussion of the computer usage information being a disclosure of demographic information. So there's a one-sentence statement about the questionnaire. It does not say that the questionnaire is a disclosure of demographic information, and then there's a discussion of the computer usage information being demographic information. So I think the correct answer to Judge Chen's question is no, the board did not rely on that, and that is the only thing that was in the petition as a disclosure of demographic information in GEO or the GIO reference. So in looking for substantial evidence to support the board's holding in this case, you would say we can't look beyond just the user profile information. I'm abusing the wrong word. The questionnaire, Your Honor? That we can't look at the questionnaire in your view. Well, I would say that what was in the petition was the contention that the questionnaire was a disclosure of demographic information, so that's what's really an issue. And no, you cannot look beyond that because that was what was in the petition, and as this court has recently said, it's important that all bases for invalidity be presented in the petition and not in a reply brief. And the board did not make a specific finding that the questionnaire does disclose demographic information, but even if they did make that finding, we would say that that finding is not supported by substantial evidence. The paragraphs that Microsoft has cited from Dr. Ho's report, there's about seven of them, and they're the only ones where it's cited for evidence in support of a finding that the questionnaire is a disclosure of demographic information. None of those paragraphs demonstrate that the questionnaire does, in fact, as opposed to could be a disclosure of demographic information or a way to collect demographic information. Dr. Ho said only that it could at best. Thank you, Mr. Angel. The case is submitted.